UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER M. FLANDERS, | ) Case No. 1:17CV1333 |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE JOHN R. ADAMS |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) REPORT AND |
| | ) <u>RECOMMENDATION</u> |

Plaintiff Christopher M. Flanders ("Flanders" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

## I.  PROCEDURAL HISTORY

On September 17, 2013, Flanders protectively filed an application for a POD and DIB, alleging disability beginning July 8, 2013.  (R. 9, PageID #: 128, 258-263, 292-301.)  Flanders's application was denied initially and upon reconsideration.  (R. 9, PageID #: 128, 208-221, 222-234.)  Thereafter, Flanders filed a written request for a hearing before an administrative law judge.  (R. 9, PageID #: 254-255.)

An Administrative Law Judge ("the ALJ") held the hearing on October 1, 2015.  (R. 9, PageID #: 150-207.)  Flanders appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 152, 155-162, 181-183.)  A medical expert ("ME") and a vocational expert ("VE") also attended the hearing and provided testimony.  (*Id.* at 163-179, 179-200.)

On February 1, 2016, the ALJ found Flanders was not disabled.  (R. 9, PageID #: 128, 145.)  The Appeals Council denied Flanders's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (R. 9, PageID #: 51-54.)  On June 23, 2017, Flanders filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.

Flanders presents the following legal issue for the court's review:  "The ALJ's discussion of the treating psychologist Dr. Kaplar and treating psychiatrist Dr. Fischer's medical opinions violated the treating source rule."  (R. 11, PageID #: 720.)

## II.  PERSONAL BACKGROUND INFORMATION

Flanders was born on July 19, 1962, and was 50 years old on the alleged disability onset date.  (R. 9, PageID #: 143, 155, 262.)  Accordingly, Flanders is considered an individual closely approaching advanced age for Social Security purposes.  *See* 20 C.F.R. § 404.1563.  Flanders has a college education and is able to communicate in English.  (R. 9, PageID #: 143, 155, 292.)  Flanders had past work as a color technician, and as an operator, catalyst concentration.  (R. 9, PageID #: 142, 181, 182.)

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Flanders's brief alleging error by the ALJ.  Flanders applied for DIB benefits on September 17, 2013, alleging disability beginning July 8, 2013.  (R. 9, PageID #: 128, 258-263, 292-301.)  Flanders listed his physical or mental conditions that limit his ability to work as: "autism spectrum disorder, ADHD, anxiety, depression, arthritis/ tendonitis," as well as a persistent sleep disorder, persistent social problems, PTSD, and scoliosis.  (R. 9, PageID #: 293, 301.)

On November 12, 2012, Flanders visited psychiatrist Philip Fischer, M.D., complaining of sleeplessness, major depression, and self-esteem issues.  (R. 9,

---

[1] The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

3

PageID #: 374.)  Dr. Fischer observed an anxious mood, restricted affect, a coherent thought process, and fair insight and judgment on the mental status exam.  *Id.* Flanders reported a good response to his current medication regimen (Stelazine, Klonopin, and Trazodone).  *Id.*

The claimant visited psychologist James E. Kaplar, Ph.D., several times a month between July 2013 and March 2014.  Dr. Kaplar diagnosed Flanders with pervasive developmental disorder, not otherwise specified; attention deficit hyperactivity disorder ("ADHD"); and secondary anxiety and depression, on July 24, 2013.  (R. 9, PageID #: 692.)

Flanders returned to Dr. Fischer for a follow-up visit on July 30, 2013, reporting tremendous stress at work.  (R. 9, PageID #: 364.)  He said that he felt bullied by his supervisors, that he cannot work as fast as they want, and he can only do one task at a time.  *Id.*  He reported to Dr. Fischer that he cannot take the stress, and wanted to go on short-term disability.  *Id.*  The doctor indicated that Flanders has great language skills, but slow processing speed and is easily distracted, so when he is pulled off one job to do another, he becomes frustrated.  *Id.* at 365.  The mental status exam showed anxious and depressed mood, flat affect, a coherent thought process, and fair insight and judgment.  *Id.* at 364.

Dr. Kaplar attempted to negotiate accommodations with Flanders' then-employer on the claimant's behalf through a September 16, 2013, letter to Shirley

Davis, R.N., of Broadshire.[2]  (R. 9, PageID #: 503-505.)  Dr. Kaplar stated that he

had diagnosed Flanders with Adjustment Disorder with Mixed Anxiety and

Depression; Asperger's Disorder; and, ADHD, Predominantly Inattentive Type.  *Id.*

at 503.  Dr. Kaplar indicated that the claimant's situation, and his inability to work,

stems from "his underlying combination of Asperger's Disorder, which is a type of

high-functioning autism, and his ADHD."  *Id.*  Dr. Kaplar also stated in his previous

position in the Color Division, Flanders "was not unduly stressed by the demands of

his job, due both to the nature of the work itself and to the fact that he had

supportive co-workers and a friendly, supportive work environment."  *Id.*  But

things became more difficult for Flanders when he was transferred to the Catalyst

Division five years ago, the environment was more stressful, his superiors were

more demanding, and the atmosphere was very different from what he had been

accustomed to.  *Id.*  Dr. Kaplar opined that Flanders would not be able to return to

work under the same conditions.  *Id.* at 504.  He suggested that the employer

recognize claimant's Asperger's Disorder and ADHD, and modify the workplace

("e.g., the demands of the job, how he is viewed and treated, etc.") with some

relatively simple accommodations which would allow Flanders to return to work.

*Id.* at 504-505.

---

[2] Broadspire is a third-party administrator of insurance and disability claims
management.  *https://www.choosebroadspire.com/us/about-us/about-broadspire/*

Flanders sent an e-mail to Dr. Kaplar on October 1, 2013, saying that things go wrong at his job all the time, he gets no help from anyone, and it is extremely stressful to him.  (R. 9, PageID #: 629.)  He expressed the view that the proposed accommodations "won't make a damn bit of difference for me."  *Id.*  Flanders stated that everything at work was "totally chaotic and unpredictable," making it immensely difficult to get things done.  *Id.*  Flanders believed that his workplace was poorly managed and inefficient, and wrote that "[t]he managers are often totally out of control, and totally unorganized."  *Id.* at 630.  He stated:  "No list of accommodations is going to solve this problem."  *Id.*

Dr. Kaplar sent a follow-up letter, on October 25, 2013, to Nurse Davis, to suggest accommodations that would be helpful to Flanders, taking account of a job description that was sent to Dr. Kaplar.  (R. 9, PageID #: 498-502.)  The psychologist set out a two-page, single-spaced list of recommended accommodations he worked out with Flanders, and noted "the most important accommodations would be those that pertain to multi-tasking."  *Id.* at 499-500.  Dr. Kaplar noted that claimant's Asperger's Disorder and ADHD make it difficult for him to shift focus between tasks, and his short-term "work memory" is below-average.  *Id.* at 499.

Dr. Kaplar attached a Statement of Disability to his October 25 letter as well.  (R. 9, PageID #: 501-502.)  He assessed claimant's functional capacity to deal with work stress as poor, and his concentration and attention span as fair to poor.  *Id.* at 501.  Emotional liability was adjudged fair, and his capacity to function

6

independently was rated good to fair. *Id.* His overall prognosis was rated as good. *Id.* Dr. Kaplar stated that Flanders could return to work once the accommodations had been put in place. *Id.* at 502.

At an October 25, 2013, follow-up visit with Dr. Fischer, Flanders expressed concern about being misunderstood, and that his functional capacity was over-estimated. (R. 9, PageID #: 375.) Dr. Fischer indicated he was working with Dr. Kaplar to formulate a list of accommodations. *Id.* On a return visit to Dr. Fischer on December 24, 2013, though, Flanders reported that his employer was not willing to make accommodations, and he could not return to work without accommodations. *Id.* at 404. Flanders said that he might have to go on disability because most of the jobs focus on efficiency and productivity, which he lacks. *Id.* at 405.

Flanders sent an e-mail to Dr. Kaplar on December 2, 2013, suggesting that Avoidance Personality Disorder (fear of rejection) was "a large part of his problem." (R. 9, PageID #: 608.) He stated that ADHD could not explain all of his problems, and that he believed anxiety was an important factor. *Id.* Flanders wrote: "If my condition were strictly due to ADHD and Asperger, it could be reasonably said that accommodations would suffice. But because of the pervasive anxiety and avoidance I don't see that accommodations will be much of a solution. I think I need to get into another line of work, with different types of people." *Id.*

On April 25, 2014, Dr. Fischer completed an assessment of claimant's mental ability to perform work-related activities. (R. 9, PageID #: 385-386.) Dr. Fischer indicated Flanders had a marked degree of impairment of his ability to relate to

7

other people, and of his ability to maintain concentration and attention for extended periods.  *Id.* at 385.  The doctor assessed that Flanders had a moderate degree of restriction of daily activities, and of his ability to sustain a routine without special supervision.  *Id.*

Dr. Fischer indicated Flanders had marked limitations on his ability to do the following on a sustained basis in a routine work setting:  respond appropriately to coworkers, respond to customary work pressures, respond appropriately to changes in the work setting, and to perform complex, repetitive or varied tasks.  *Id.* at 385-386.  The claimant had moderate limitations on his ability to do the following: respond appropriately to supervision, to use good judgment, and to behave in an emotionally stable manner.  *Id.*  Dr. Fischer noted that Flanders' medications might produce mild sedation or fatigue.  *Id.* at 386.  Dr. Fischer indicated that the claimant's condition was likely to deteriorate if he was placed under stress, especially job stress, and the doctor estimated that Flanders' impairments or treatments would cause him to be absent from work about twice a month.  *Id.*

Dr. Kaplar completed an assessment of claimant's mental ability to do work-related activities, with extensive handwritten comments, on September 26, 2014. (R. 9, PageID #: 538-539.)  Dr. Kaplar's assessment differed substantially from Dr. Fischer's, five months earlier.  Dr. Kaplar concurred that Flanders had a marked degree of impairment of his ability to relate to other people, but indicated that he

8

had an extreme[3] limitation of his ability to maintain concentration and attention for extended periods.  *Id.* at 538.  The psychologist also found that Flanders had a marked limitation of claimant's ability to perform activities within a schedule, maintain regular attendance and be punctual (Dr. Fischer had indicated "mild"). *Id.*  Dr. Kaplar assessed that Flanders had a moderate degree of restriction of his ability to sustain a routine without special supervision, but only a mild restriction of his ability to carry out daily activities.  *Id.*

Dr. Kaplar indicated Flanders had extreme limitations on his ability to do the following on a sustained basis in a routine work setting:  respond to customary work pressures, respond appropriately to changes in the work setting, to perform complex, repetitive or varied tasks, and to behave in an emotionally stable manner. (R. 9, PageID #: 538-539.)  The claimant had marked limitations on his ability to understand, carry out and remember instructions (Dr. Fischer had indicated "mild").  *Id.* at 538.  Flanders had a moderate limitation of his ability to use good judgment.  *Id.* at 539.  The claimant had only mild limitations on his ability to respond appropriately to supervision and coworkers, and to perform simple tasks. *Id.* at 538-539.

Dr. Kaplar noted that Flanders' medications improved his ability to function, and stated, "without medicine he would not have survived on the job at all."  (R. 9,

---

[3] The form defines an "extreme" limitation as "Major limitation with no useful ability to function."  (R. 9, PageID #: 538.)

PageID #: 539.)  The psychologist stated that the claimant's condition was likely to deteriorate if he was placed under stress, especially job stress, but the psychologist estimated that Flanders' impairments or treatments would cause him to be absent from work on average more than three times per month.  *Id.* Dr. Kaplar also commented that there was a "significant possibility of decompensation if under too much stress.  These are stress levels that the average person would find frustrating but could tolerate."  *Id.*

Dr. Kaplar provided a "Final Note," dated November 3, 2015, in which he states that he had been unsuccessful, "despite repeated attempts," to get Flanders to return to see him since their last meeting in September 2014.  (R. 9, PageID #: 537.)  Dr. Kaplar stated:  "In my opinion, when I last saw Mr. Flanders, he was not able to function effectively in a competitive work environment, due to the limitations that I have documented.  In my opinion, this is unlikely to change."  *Id.*

At the hearing, the medical expert, psychiatrist Dr. Schrier, testified that Flanders was moderately impaired in activities of daily living, in social functioning, and in concentration, persistence and pace.  (R. 9, PageID #: 166-167.)

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his February 1, 2016, decision:

1.  Mr. Flanders meets the insured status requirements of the Social Security Act through December 31, 2019.

10

2.  Mr. Flanders has not engaged in substantial gainful activity since July 8, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3.  Mr. Flanders has the following severe impairments: Asperger's syndrome also known as autism spectrum disorder, attention deficit disorder, adjustment disorder with mixed anxiety and depressed mood, anxiety disorder, and major depression with psychotic features (20 C.F.R. 404.1520(c)).

4.  Mr. Flanders does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that Mr. Flanders has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> Mr. Flanders could not and cannot do work involving high or strict production quotas.
> Mr. Flanders could not and cannot do assembly line work or piece rate work.
> Mr. Flanders could not and cannot do work involving negotiation, arbitration, confrontation, or other intense interpersonal interactions with the public, coworkers, or supervisors.
> Mr. Flanders could not and cannot do work involving more than perfunctory contact with the public.
> Mr. Flanders could not and cannot do work involving working with other people as part of a team or in tandem.
> Mr. Flanders could not and cannot manage or supervise other people.
> Mr. Flanders could not and cannot do work involving him being responsible for the health, safety or welfare of other people.
> Mr. Flanders could not and cannot do work involving more than seldom changes or variation of tasks or routine.
> Mr. Flanders could and can understand complex instructions but only if broken down into single task components and only if given in standard, conventional English using concrete examples.

11

6.  Mr. Flanders is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  Mr. Flanders was born on July 19, 1962, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. 404.1563).

8.  Mr. Flanders has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Mr. Flanders is "not disabled," whether or not Mr. Flanders has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering Mr. Flanders's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Flanders can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.  Mr. Flanders has not been under a disability, as defined in the Social Security Act, from July 8, 2013, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 9, PageID #: 130-131, 134, 142, 143, 144.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve (12) months." 20

C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-

step sequential analysis in making a disability determination. *See* 20 C.F.R. §

404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir.

2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in
> substantial gainful activity during the period of disability. 20 C.F.R. §
> 404.1520(a)(4)(i). Second, the claimant must show that he suffers from
> a severe medically determinable physical or mental impairment. *Id.* §
> 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment
> meets or medically equals one of the impairments listed in 20 C.F.R.
> Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* §
> 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the
> claimant's residual functional capacity, the claimant can perform his
> past relevant work, in which case the claimant is not disabled.  *Id.* §
> 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the
> claimant's residual functional capacity, as well as his age, education,
> and work experience, the claimant can make an adjustment to other
> work, in which case the claimant is not disabled.  *Id.* §
> 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but
> the burden shifts to the Commissioner at step five.  *Walters v. Comm'r
> of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a

determination of whether the ALJ applied the correct legal standards, and whether

the findings of the ALJ are supported by substantial evidence.  *Blakley v.*

13

*Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

VII.  ANALYSIS

Flanders presents the following legal issue for the court's review:  "The ALJ's discussion of the treating psychologist Dr. Kaplar and treating psychiatrist Dr. Fischer's medical opinions violated the treating source rule."  (R. 11, PageID #: 720.)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[4] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2));

---

[4]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017).  Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect.  For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

15

*Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other words, treating

physicians' opinions are only given deference when supported by objective medical

evidence.  *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir.

Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

     Social Security regulations require the ALJ to give good reasons for

discounting evidence of disability submitted by the treating physician(s).  *Blakley*,

581 F.3d at 406; *Vance*, 2008 WL 162942, at *3.  Those good reasons must be

supported by evidence in the case record, and must be sufficiently specific to make

clear to subsequent reviewers the weight assigned to the treating physician's

opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581

F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio

2009) (quoting SSR 96-2p).  The obligation to provide good reasons permits

meaningful and efficient review of the ALJ's application of the treating physician

rule. *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011).

## A.  Treating Psychologist Dr. Kaplar

     Flanders argues that the ALJ should have assigned controlling weight to the

opinions of treating psychologist Dr. Kaplar, namely a handwritten "Final Note:

Summary, Conclusions, Prognosis" (R. 9, PageID #: 537), and an "Assessment of

Ability to Do Work-Related Activities (Mental)" (*id.* at 538-541).  Flanders asserts

the opinions were well-supported and not inconsistent with other substantial

evidence in the case record.  (R. 11, PageID #: 721.)  The ALJ's decision contains a

16

thorough recitation of Dr. Kaplar's pertinent records, along with a detailed

discussion and assessment of the provider's handwritten "Final Note," mental

assessment opinions and handwritten annotation on that assessment form.  (R. 9,

PageID #: 138-139, citing R. 9, PageID #: 537-541 (20F/3-7).)

The ALJ addressed Dr. Kaplar's "Assessment of [Mental] Ability" as a

medical source statement, assessing the opinion as follows:

> For purposes of making the findings that I am required to make in this
> decision, I give no weight to any of these opinions because, after
> reading Dr. Kaplar's treatment notes and the other evidence in the
> record considered as a whole, I got the impression, and finally
> concluded, that Dr. Kaplar's opinions were based on Mr. Flanders'
> experience at the last job he held before the alleged onset date, not on
> Mr. Flanders' overall ability to function, whether in other less
> demanding jobs, or in life overall.  I give no weight to the percentage of
> task portions of these opinions for the additional reason that
> percentage of time on task is not how the Social Security
> Administration regulations define "none," "mild," "moderate,"
> "marked," or "extreme" for purposes of evaluating mental impairments
> or the work-related limitations that they cause, because the
> percentages used were chosen by the attorney, not by the treating
> source or by any association of mental health professionals.

(R. 9, PageID #: 139.)

The ALJ addressed Dr. Kaplar's handwritten "Final Note" as a medical

source statement, addressing the opinions as follows:

> For purposes of making the findings that I am required to make in this
> decision, I give no weight to any of these opinions because, after
> reading Dr. Kaplar's treatment notes and the other evidence in the
> record considered as a whole, I got the impression, and finally
> concluded, that Dr. Kaplar's opinions were based on Mr. Flanders'
> experience at the last job he held before the alleged onset date, not on
> Mr. Flanders' overall ability to function, whether in other less
> demanding jobs, or in life overall.  The opinion that Mr. Flanders was
> unable to function effectively in a competitive work environment is

17

> given no weight for the additional reason that the opinion is on an
> issue reserved to the Commissioner pursuant to 20 CFR 404.1527 and
> SSR 96-5p.

(R. 9, PageID #: 139-140.)

The ALJ is correct that Dr. Kaplar's opinion that Flanders is "not able to function effectively in a competitive work environment" (R. 9, PageID #: 537) is a conclusion on the ultimate issue of disability.  The issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner.  See 20 C.F.R. § 404.1527(d)(1); *Vance*, 2008 WL 162942, at *3; *Walker v. Secretary, HHS*, 980 F.2d 1066, 1070 (6th Cir. 1992).  Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference. *See* 20 C.F.R § 404.1527(d)(3).  There is no error in the ALJ's assessment of Dr. Kaplar's finding that Flanders is unable to function effectively in a competitive work environment.

Flanders argues that the assessment of mental ability form asked the treating source what the claimant can still do despite his impairments; and his argument follows, that the ALJ disregarded Dr. Kaplar's opinions based on "nothing more than an unfounded hunch" that the opinions were limited to the circumstances of his previous job.  (R. 11, PageID #: 721-23.)  The form reads in relevant part:

> Please answer the following questions by checking the appropriate
> category, thereby vocationally quantifying how the mental limitations
> would impact the claimant being on task in an 8 hour workday on a
> sustained basis.  It is essential that your answers be based on your
> estimate of the claimant's psychiatric/ psychological impairment and

18

> not on non-medical factors such as availability of job openings, hiring practices of employers, etc. * * * * *  Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal work day and full week (8 hours/day, 5 days/week or the equivalent).

(R. 11, PageID #: 722, quoting R. 9, PageID #: 538.)  The court agrees, as Flanders suggests, that the form properly solicits the doctor's opinion concerning what the claimant is capable of doing despite his impairments, and what his mental restrictions are in the workplace.  *See* 20 C.F.R. § 404.1527(a)(2).  Dr. Kaplar's assessment, however, often narrowly focused on claimant's specific job, rather than as the ALJ indicated "Flanders' overall ability to function, whether in other less demanding jobs, or in life overall."  *See, e.g.*, R. 9, PageID #: 140, 539 ("Prior to 2002, he had a better work environment..."  "They used to have unlimited sick time, prior to 2002...")

Further, the ALJ did not limit his consideration to Dr. Kaplar's opinions as stated in the assessment of mental ability form alone, but stated that he had also considered "Dr. Kaplar's treatment notes and the other evidence in the record considered as a whole."  (R. 9, PageID #: 140.)  A treating source's opinions are only given deference when supported by objective medical evidence.  *Vance*, 2008 WL 162942, at *3.

The Commissioner contends that the ALJ correctly determined that Dr. Kaplar's opinions were more relevant to claimant's ability to perform the specific job he held immediately prior to when he ceased working, rather than to his ability to function in the work force generally.  (R. 12, PageID #: 731.)  The Commissioner

19

asserts that the medical evidence demonstrates that Flanders was treated for his impairments for many years, and had no significant difficulty performing his prior work.  *Id.*

The court agrees.  For example, Dr. Kaplar stated in his September 16, 2013, letter to Nurse Davis that Flanders had "lifelong disorders" of Asperger's Disorder and ADHD, but noted Flanders had a long successful career with his employer until he transferred to a different position five years earlier.  (R. 9, PageID #: 503.) Indeed, Flanders testified that he worked for eight years in his previous position in the Color Division.  *Id.* at PageID#: 182.  Dr. Kaplar noted that Flanders' work only became "considerably more difficult for [claimant] when he was transferred to the Catalyst Division."  *Id.*  Dr. Kaplar does not mention any adverse change attributable to a worsening of Flanders' impairments themselves.  *Id.* at 503-505. Dr. Kaplar's record acknowledged that, with reasonable accommodations, Flanders would be able to work.  *Id.* at 504-505; *see also* PageID #: 502 (Flanders could return to work once accommodations had been put in place).

At the hearing, psychiatrist Dr. Schrier testified that "the treating doctors are saying [Flanders] needs accommodation on a job.  They're not saying he can't do it.  They're saying he needs I would say significant accommodation and that turns into a vocational question more than medical."  (R. 9, PageID #: 172.)  Dr. Schrier added that "I can't disagree that he's having a great deal of difficulty functioning [in the recent job] and I – I do believe that's a vocational issue more than it is medical. He's gotten along very well for years and years and years."  *Id.* at 173.

20

The Commissioner asserts it is relevant that claimant's impairments existed for many years, at essentially the same level, and only resulted in the loss of a job when claimant was unable to perform more complex work. (R. 12, PageID #: 734.) The Commissioner contends that "[a] medical condition that was present during working years and has not significantly worsened does not support disability at the time of the ALJ's decision." *Id.*, citing *Bowen v. Social Sec. Admin.*, No. 14-5079, 2014 WL 5565100, at *2 (6th Cir. Nov. 3, 2014) (per curiam). The court agrees that the evidence demonstrates that Flanders was treated for his impairments for many years, and these impairments did not prevent him from performing his prior work.

Flanders also asserts that the ALJ erred when the decision gave "no weight to the percentage on task portions" of Dr. Kaplar's opinion. The ALJ discounted that portion because the related definitions were not in accord with the Social Security regulations, and the percentages were chosen by the attorney, not the treating source. (R. 11, PageID #: 723, citing R. 9, PageID #: 139; *see also* R. 9, PageID #: 538.) Flanders points out that the treating source is free to opine what functional limitations an individual may suffer due to his impairments. (R. 11, PageID #: 723.) The court agrees that the pertinent issue is not the form and whether the attorney (who presumably composed the form) formulated categories which do not align to those used by the SSA. The form contained defined terms, and the treating psychologist could discern which term he deemed applicable according to the definitions provided. *See generally* R. 9, PageID #: 538. The issue is not the form itself, but whether the opinion provided through that form is well-

21

supported by substantial evidence in the record.  *See generally Hutchison v. Commissioner*, No. 1:13CV1462, 2014 WL 4852269, at *7 (N.D. Ohio Sept. 29, 2014). The fact that the ALJ gave "no weight to the percentage on task portions" of the opinion is harmless error, however, in light of the substantial evidence discussed above which supports the ALJ's assessment of Dr. Kaplar's opinions.  As discussed, the medical evidence of record demonstrates that Flanders was treated for his impairments for many years, and these impairments did not prevent him from performing his prior work.

The specific reasons why the ALJ declined to grant Dr. Kaplar's opinions controlling weight are set forth in the decision, as discussed above.  A treating source's opinions are only given deference when supported by objective medical evidence.  The ALJ's determination – that Dr. Kaplar's opinions on the vocational impact of Flanders' alleged disabilities were not well-founded – is supported by reference to substantial evidence in the record.


### B.  Treating Psychiatrist Dr. Fischer

Flanders contends that the ALJ failed to provide good reasons for assigning no weight to the opinion of treating psychiatrist Dr. Fischer.  (R. 11, PageID #: 723.) Rather, Flanders argues that the ALJ should have assigned the opinion controlling weight.  *Id.*

The ALJ addressed Dr. Fischer's April 2014 opinion as he did Dr. Kaplar's opinion, by concluding:

22

For purposes of making the findings that I am required to make in this decision, I give no weight to any of these opinions[5] because, after reading Dr. Fischer's treatment notes and the other evidence in the record considered as a whole, I got the impression, and finally concluded, that Dr. Fischer's opinions were based on Mr. Flanders' experience at the last job he held before the alleged onset date, not on Mr. Flanders' overall ability to function, whether in other less demanding jobs, or in life overall.  I give no weight to the percentage on task portions of these opinions for the additional reason that percentage of time on task is not how the SSA regulations define "none," "mild," "moderate," "marked," or "extreme" for purposes of evaluating mental impairments or the work-related limitations that they cause.  Furthermore, these percentages used were chosen by the attorney, not by the treating source or by any association of mental health professionals.

(R. 9, PageID #: 138.)  Flanders asserts "the ALJ provided the same problematic rationale used to toss out treating psychologist Dr. Kaplar's opinions as discussed *supra* (TR 488)."  (R. 11, PageID #: 723.)

An ALJ is required to give good reasons for discounting evidence of disability submitted by a treating source.  *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear the weight assigned to the treating source's opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning*, 661 F.Supp.2d at 818-819 (quoting SSR 96-2p).  In some cases, even a "brief" statement identifying the relevant factors has

---

[5] Although the ALJ uses the plural "opinions," it appears that the ALJ is addressing a single opinion here, Dr. Fischer's April 25, 2014, assessment of claimant's mental ability to do work-related activities.  (R. 9, PageID #: 138, citing PageID #: 385-386 ("8F/2-3").)

23

been found adequate to articulate "good reasons" to discount a treating physician's opinion. *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

Here, the ALJ referenced Dr. Fischer's treatment notes as support for the weight he assigned, and discussed several in the opinion. (R. 9, PageID #: 135-136.) On July 30, 2013, Dr. Fischer reported Flanders was feeling tremendous stress at work, that he could not work as fast as supervisors wanted him to, and he could only do one task at a time. *Id.* at PageID #: 364. The psychiatrist noted that Flanders "gets very angry and nervous at work. He said that previous supervisors were more understanding and flexible." *Id.* at 365.

On July 10, 2014, Dr. Fischer's appointment notes indicate Flanders reported "a little bit more depression/ anxiety" driven primarily by financial worries and not working. (R. 9, PageID #: 446.) The psychiatrist assessed his condition as stable, with a good response to his current medication regimen, and characterized his condition as established and status as no change. *Id.* at 447. Dr. Fischer discussed with claimant strategies to seek employment, and the fear of trying to work or being fired. *Id.* During an October 31, 2014 appointment, Flanders noted he was pursuing employment, telling Dr. Fischer, "I'm very disappointed by the types of jobs that are out there." *Id.* at 435.

At an April 16, 2015 appointment with Dr. Fischer, Flanders reported he was unemployed. (R. 9, PageID #: 533.) The doctor noted that Flanders had to leave his last job because the tasks changed, he had difficulty multi-tasking, and the employer was not able to make special accommodations for him. *Id.* The

24

psychiatrist assessed no change in mental status, although he was anxious and depressed, and characterized him as "stable, unchanged." *Id*. at 533-534. Flanders returned to Dr. Fischer on September 14, 2015. (R. 9, PageID #: 518.) The doctor noted that Flanders had no change in mental status, he was stable and unchanged. *Id*. at 518-519.

The claimant asserts that the ALJ should have discussed "the supportability of these opinions and their consistency with the record as a whole." (R. 11, PageID #: 723.) The court agrees, in part. Dr. Kaplar's assessment of claimant's mental ability to do work-related activities was annotated extensively with handwritten comments (R. 9, PageID #: 538-539). Dr. Fischer's April 25, 2014, assessment form was limited, for the most part, to checking off the options on the form. (R. 9, PageID #: 385-386.) Dr. Fischer's assessment differed substantially from Dr. Kaplar's and it is apparent that the ALJ did not consider it consistent with his notes or the overall record, although the ALJ did not expressly rely upon its inconsistency. *See generally* 20 C.F.R. § 404.1527(c)(4).

More importantly, however, the court finds that the decision did address the supportability of the opinions. As the Commissioner points out, claimant's course of treatment was not consistent with disabling mental impairments. (R. 12, PageID #: 738.) Further, the Commissioner notes that:

> The records cited by the ALJ show that Plaintiff was able to look for work, and that the contemporaneous treatment records showed an ability to work and general stability, but the Plaintiff could not find a job that he wanted to do. The ALJ's conclusions regarding the medical opinions were reasonable. Plaintiff's primary problem was an inability

> to perform the job he held immediately prior to the allegation of disability.

(R. 12, PageID #: 738.)  This is an accurate summation of the evidence that the court has already discussed above.

The ALJ's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.  The ALJ's assessment of the psychiatrist's opinions is supported by a lengthy discussion of the medical evidence of record (R. 9, 135-142).  The specific reasons why the ALJ assessed Dr. Fischer's opinions "no weight," rather than controlling weight, are set forth in the decision (R. 9, PageID #: 138), although the decision could have included additional explanation and Flanders believes Dr. Fischer's opinion compels a different conclusion.

The ALJ supplied good reasons, supported by evidence in the case record, which are sufficiently specific to make clear the reasons for the weight he assigned to the treating psychologist's opinion.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning*, 661 F.Supp.2d at 818-819.  In addition, for the reasons discussed above, concerning the similar challenge to the ALJ's weighing of Dr. Kaplar's opinion on the same basis (claimant's experience at his last job), the court finds the ALJ's decision was supported by substantial evidence.

26

The decision of the Commissioner should be affirmed.


                                    s/ David A. Ruiz
                                    David A. Ruiz
                                    United States Magistrate Judge


Date:  May 14, 2018

## OBJECTIONS

    Any objections to this Report and Recommendation must be filed with the
Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file
objections within the specified time WAIVES the right to appeal the Magistrate
Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United
States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).